The plaintiff, Henry Smith, appeals from a judgment refusing to set aside a deed and reform it into a mortgage.
In 1977 Smith acquired 11 acres of land. Shortly thereafter, he purchased a mobile home with loan proceeds of approximately $7000, from a loan with Avondale Credit Union, which was secured by a mortgage on the property. Smith made payments on this loan until 1986, when he lost his regular job. Smith defaulted on the loan, and foreclosure proceedings were instituted. At that time, Smith owed approximately $2,700 on the loan.
Smith testified that after he lost his job he did some work for the defendant, Matthew Player. Smith stated that he approached Player about "paying off" the credit union mortgage and that he and Player agreed that Player would pay off the debt secured by the mortgage and that Smith would repay him. The record indicates that Player then contacted his attorney.
Player's attorney testified that he drew up a fee simple survivorship deed to Smith's property, with Player and his wife as grantees, and that Player and Smith met with him briefly to execute the deed. Player's wife died before Smith filed this action, and, pursuant to the survivorship deed, Player claims a full interest in the land in dispute.
Smith testified, in substance, that it was his understanding and intention, and, he says, Player's expressed intention and understanding, that the deed was to have only the effect of securing a debt to Player; their intention, he says, was to convey only a temporary interest in the land to Player and that that interest would ripen into title in fee simple if Smith failed to repay Player by January 1987.
Immediately after the execution of the deed, Player and Smith carried a check for the balance on the credit union mortgage to the offices of the credit union's attorney. Smith did not directly receive any proceeds from the transaction, and the evidence indicates that the amount Player paid on the credit union loan was anywhere from $700 to $24,800 less than the fair market value of the property.
Consistent with Smith's testimony about the nature of the transaction, Ms. Shirley Sawyer, an employee of the credit union's attorney, testified that while the two were in her employer's offices, she overheard Player say to Smith that "he could pay this money back and get his property back."
Player's attorney stated that it was his habit to advise his clients to record deeds immediately. It is undisputed that Player did not do so and did not demand rental payments or the execution of a lease from Smith, who continued to live on the property.
Smith testified that when, in January 1987, he attempted to repay Player, Player refused repayment. Smith stated that Player said he had "changed his mind" because he believed that Smith had made some unflattering remarks about him subsequent to the transaction. Smith said, "[Player] changed his mind. Said I done went around and put bad mouth on him, and I ain't had said nothing about nothing."
Smith sought legal assistance, and, through an attorney, sued to have the deed reformed into a mortgage and filed a lis pendens notice of the lawsuit. Thereafter, Bill and Bobbie Jenkins and Kimberly Pruitt, intervenors in this ease, purchased the Smith property from Player, evidently without first examining the title to the property.
A judgment based on ore tenus evidence, as was the judgment denying Smith relief, *Page 948 
will not be disturbed on appeal unless it is plainly and palpably wrong. Holman v. Hall, 248 Ala. 541, 28 So.2d 629
(1946).
In the present case, with due deference to the learned trial court judge, we must conclude that the judgment is due to be reversed. However, we note that the trial court's action is perhaps understandable for two reasons. First, that court was confronted with testimony from Smith that is difficult to sort out. This can be attributed to Smith's apparent lack of adequate communication skills; Smith can neither read nor write, except for his own name, and he has only a fourth-grade education. The trial court record is testament to Smith's difficulty with the spoken word.
Second, this case presents a very unusual situation in that Player's attorney gave testimony that indicates that he explained to Smith and Player a correct legal opinion of the effect of the deed.
In denying Smith relief, the trial court specifically found that "the deed was fully explained to the plaintiff," that "the consequences of the plaintiff's execution were fully explained to the plaintiff," and that "the plaintiff indicated his understanding of the same." The record indicates that the basis of these findings was testimony by Player's attorney about comments he made when he met with Smith and Player to present the deed for execution.
Player's attorney gave testimony indicating that he explained to Smith in Player's presence, in various terms, that the transaction was "an outright sale."
However, it is critical to note that the question before the trial court was Player and Smith's intention and understanding about the effect of the deed. Irrespective of what that understanding should have been, given the attorney's comments, the question to be answered remains.
One could infer, from the testimony about the attorney's comments, that the two in fact understood the correct legal effect of the deed. From this inference one could further infer that if the two did not intend to effectuate an "outright sale" then Smith would not have executed the deed. However, one may not make such a inference under our rules of evidence. One cannot premise an inference upon another inference. MaloneFreight Lines, Inc. v. McCardle, 277 Ala. 100, 167 So.2d 274
(1964); Khirieh v. State Farm Mut. Auto. Ins. Co.,594 So.2d 1220 (Ala. 1992). Thus, Player and Smith's intention and understanding cannot be inferred from the attorney's comments to them.
We now turn to that understanding and intention.
At no time has Player refuted Smith's testimony that this "outright sale," as it was referred to by his attorney, was actually intended by him and Player to be a sort of conditional sale conditioned upon Smith's failure to repay. Player did not testify at trial, offered no sworn statements, and did not answer Smith's complaint.[1] That an attorney basically told the two that they were not creating, in a technically correct way, a conditional sale, i.e., a type of security arrangement, does not alter the fact that, consistent with testimony from Smith and Sawyer, this could have been precisely the effect the two intended the deed to have.[2] In fact, this is the only logical inference that can be drawn. For example, testimony that Player expressed this understanding, both before and just after the execution of the deed, is unrefuted.
We note also, that until a disagreement later arose between Player and Smith, Player did not record the deed and that Smith continued to live on the property without objection by Player. Similarly, the evidence indicates that Smith continued paying taxes on the property until long *Page 949 
after this controversy arose; until 1989, when Smith discovered that Player had transferred the assessment into his name, Smith was the assessed owner and paid the tax.
In Andress v. Parish, 239 Ala. 67, 69, 193 So. 727 (1940), this Court stated:
 "At common law, a deed of conveyance of land absolute and unconditional on its face, but intended and understood by the parties to be merely a security for the payment of a debt, will be treated in equity as a mortgage, conferring upon the parties the relative rights and remedies of the mortgagor and mortgagee, and nothing more."
The facts of this case fall within this situation.
Based on the evidence adduced in this case, we reverse the judgment of the trial court and remand this cause for an order consistent with this opinion. In so doing, we recognize that third parties have purchased the property in question. However, the purchasers, Bill and Bobbie Jenkins and Kimberly Pruitt, have no protection from Smith's claim of title, because they had constructive notice of his claim by virtue of the lis pendens notice filed prior to their purchase. See Scott v.Hales, 575 So.2d 1058, 1060 (Ala. 1991), and § 35-4-130 et seq., Ala. Code 1975. Their recourse, given our discussion, is not properly against Smith, but against Player, who purported to convey the property to them by a warranty deed during the pendency of this case.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS, KENNEDY and INGRAM, JJ., concur.
[1] Smith did not move for a default judgment or object to Player's presenting testimony from his attorney.
[2] We note also that Smith attempted, unsuccessfully, to offer testimony from two additional witnesses as to alleged similar statements about the nature of the transaction that Player purportedly made on other occasions. It is unnecessary to explain our conclusion that, as Smith argues, this testimony was improperly excluded, because this conclusion does not alter the disposition of this appeal.